**RIVIERA FINANCE, Plaintiff,**

v.

**TRUCKING SERVICES, INC., et al., Defendants.**

**No. 95 C 5479.**

United States District Court, N.D. Illinois, Eastern Division.

Nov. 15, 1995.

---

Bradford P. Lyerla, J. Jeffrey Zimmerman, Jenner & Block, Chicago, Illinois, for Plaintiff.

Patrick S. Ryan, Bristol, Indiana, for Defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Riviera Finance ("Riviera"), having cured the inadvertent jurisdictional defects contained in its original Complaint,[1] has continued to assert via its First Amended Com-

plaint ("FAC") a breach of contract claim against Trucking Services, Inc. ("Trucking Services") and a breach of guaranty claim against Alan and Diane Johnson. Riviera, a partnership, is a citizen of California and Nevada (the states of citizenship of its two partners), while all three defendants are Indiana citizens, so that federal jurisdiction is based on diversity of citizenship.

Defense counsel has promptly filed a motion to transfer this action to defendants' home base (the Northern District of Indiana) under 28 U.S.C. § 1404(a) ("Section 1404(a)"), and at this Court's request both sides have submitted information as to the prospective witnesses whose testimony will likely be needed to resolve the parties' dispute. For the reasons stated in this memorandum opinion and order, defendants' motion is granted.

This opinion must regrettably begin by discussing a matter other than the three criteria that are set out in Section 1404(a) ("the convenience of parties and witnesses, in the interest of justice"). Instead Riviera's counsel begins the substantive discussion (its Mem. 6–7) by seeking to forestall that analysis—counsel portrays defendants as assertedly having waived any right to invoke that statute by having entered into what counsel characterizes as "an enforceable forum selection clause" (Mem. 6). But that contention is frankly irresponsible and would have been far better omitted entirely from Riviera's presentation.

It is of course well-held that a *true* forum selection clause binds a litigant, so that something at least in the nature of an "exceptional showing" would be needed to permit a Section 1404(a) motion to override a freely-negotiated provision of that nature. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290–91 (7th Cir.1989), which was followed by our Court of Appeals in *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir.1990), has so ruled, relying in substantial part on the Supreme Court's opinions in *The Bremen v. Zapata*

---

1. This Court's sua sponte September 27, 1995 memorandum opinion and order had pointed out those defects to Riviera's counsel.

*Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (a case decided in the forum non conveniens context) and *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (a case addressing a Section 1404(a) issue).

But all of the cases so holding have dealt with real forum *selection*—with agreements providing that jurisdiction is to be vested *exclusively* in a forum upon which the parties have agreed. Here by sharp contrast is the contractual provision to which Riviera points (Security Agreement ¶ 64):

> JURISDICTION/WAIVER OF JURY TRIAL: Client [Trucking Services] hereby consents to the nonexclusive jurisdiction of the local, state or federal court located with [sic] the State of *Illinois.* CLIENT [sic] hereby unconditionally waives its right to a jury trial in any suit or proceeding arising under or relating to this Agreement.[2] Agreed to *ARL* initial.

What, pray tell, can the word "nonexclusive" mean other than to scotch any possible argument of waiver? Surely that contractual language tells us that courts other than those in Illinois may also have "nonexclusive" jurisdiction, and that is precisely the stuff to which the Section 1404(a) balancing process may address itself.

■ One other side issue should be mentioned briefly before cutting to the chase. Riviera's Mem. 6 also refers to Security Agreement ¶ 63:

> This agreement shall be governed by and construed in accordance with the laws of the state of Illinois.

That choice-of-law provision is of course a factor to be weighed in the scales as prescribed by Section 1404(a) and the case law applying it, but it is far from a compelling factor. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (one of the opinions written by this Court's former law partner Honorable Arthur J. Goldberg during his brief tenure on the Supreme Court that still retains full vigor more than three decades later) teaches that the law of the transferor district continues to apply to an action following its transfer under Section 1404(a). And the necessary implication of that decision is that there are situations in which transfer is appropriate even though the transferee district will be called upon to apply "foreign" law (that of the transferor district)—whether because of the transferor district's choice-of-law rules or under a contractual provision (such as Security Agreement ¶ 63) to that effect.

This opinion turns then to the merits of defendants' motion. As this Court has frequently remarked in such cases, "convenience of the parties" is frequently a standoff—by definition, every contested Section 1404(a) situation results from the fact that neither party wants to litigate on the other's turf. Nothing tendered by the litigants suggests that anything other than that type of standoff is operative here.

■ Most often the controlling factor for Section 1404(a) purposes is "convenience of witnesses"—an analysis that looks at the persons who will be required to take time away from their respective home bases and activities to deal with trial preparation (by way of depositions and otherwise) and with trial. In this instance the detailed submission by defendants is much more persuasive than that offered up by Riviera. Because the existence or nonexistence of defendants' liability is a function of their claimed initial misrepresentations and of their claimed subsequent actions in alleged breach of their contractual obligations (FAC ¶ 11), and because those matters and the witnesses who are able to testify to those matters are plainly primarily Indiana-based rather than Illinois-based, the degree of preference that is generally accorded to a plaintiff's choice of forum—a matter that has been reconfirmed in *Stewart Organization,* 487 U.S. at 31, 108 S.Ct. at 2245 as "only one relevant factor for [a district court's] consideration" in exercis-

---

**2.** It appears from the photocopy of the Security Agreement that the word "Illinois" is underscored in the original. For present purposes, of course, the key (and controlling) word is obviously "nonexclusive."

ing its "broad discretion" under Section 1404(a)—is strongly overcome by the numbers of Indiana-based witnesses and by the scope of their anticipated testimony as set out by defense counsel.[3]

As for the congeries of factors that the cases encompass within the term "interest of justice," which are frequently spoken of in the same terms as the forum non conveniens factors described in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) and more recently summarized in *Piper Aircraft v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981),[4] this Court has reviewed them with care. First, because of the geographical proximity of the two districts involved, several of the considerations spoken of in those cases as "public factors"[5] have at best minimal bearing in this case: This Court is frequently called upon to apply Indiana substantive law in cases on its calendar, and it seems likely that its colleagues in the Northern District of Indiana have like experience with Illinois law.[6] Besides, contract law (which is involved here) tends to be more universal in its principles than most areas of substantive law, so that an Indiana federal judge is unlikely to encounter any real difficulty in researching and applying the Illinois doctrines that will be involved here.

As for the other factors that make up the "interest of justice,"[7] there is no need to parse them in detail. Suffice it to say that in several instances they are neutral and that overall they tilt the scales even further in favor of defendants. It is particularly worth observing (given the reference in *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 to "the administrative difficulties flowing from court congestion" as another "public factor") that the federal court management statistics that emanate from the Administrative Office of the United States Courts[8] reflects that although the two districts have virtually identical per-judge civil caseloads, the median time in bringing civil cases to trial in this District is nearly 40% greater than in the Northern District of Indiana (22 months v. 16 months) and the percentage of civil cases that is more than three years old—which is the reporting benchmark as set by the Civil Justice Reform Act—is nearly 70% greater in this District than in the Indiana District (6.8% v. 4.1%).

In summary, the combined effect of the three statutory considerations under Section 1404(a) points strongly to the transfer rather than the retention of this case. Defendants' motion is therefore granted, and this action is ordered transferred to the United States District Court for the Northern District of Indiana. In accordance with this District

3. Parenthetically, no weight is really to be given to the fact that Trucking Service's payments under its contract were made to Riviera's Illinois office or to the Illinois location of Riviera's paper records. In these days of the ubiquitous photocopy machine, such considerations tend to be significant only in a heavily-document-intensive case. This is not such a case.

4. This point should not be misunderstood. *Piper Aircraft, id.* at 253, 102 S.Ct. at 264–65 (legislative history citations omitted) reconfirmed the greater latitude conferred on the federal judiciary for transfers under Section 1404(a) than the scope given to forum non conveniens dismissals:

   Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens,* it was intended to be a revision rather than a codification of the common law. *Norwood v. Kirkpatrick,* 349 U.S. 29 [75 S.Ct. 544, 99 L.Ed. 789] (1955). District courts were given more discretion to transfer under § 1404(a) than they

had to dismiss on grounds of *forum non conveniens.* Id., at 31–32 [75 S.Ct. at 546].

5. *Piper, id.* at 241 n. 6, 102 S.Ct. at 258 n. 6, quoting *Gulf Oil,* referred to "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the actions" and "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law."

6. Moreover, if an appeal results from any final judgment in this case, it goes without saying that our Court of Appeals is totally familiar with the Illinois law of contracts.

7. As this Court has commented in other Section 1404(a) rulings, one element that Congress did *not* choose to insert into the balancing equation was "convenience of counsel."

8. What follows in the text is taken from the figures for the last fiscal year that is covered by that Office's published reports (the 12–month period ended September 30, 1994).

Court's General Rule 30(A), this Court directs that the case be transferred forthwith.