BURLINGTON INDUSTRIES, INC., Plaintiff,

v.

YANOOR CORP., d/b/a Burlington Rug Corporation, Defendant.

No. CIV. 1:01CV00663.

United States District Court, M.D. North Carolina.

Nov. 1, 2001.

Benjamin F. Davis, Jr., D. Marsh Prause, Smith Helms Mulliss & Moore, Greensboro, NC, for plaintiff.

Daniel W. Fouts, Peter G. Pappas, Brian Stephen Clarke, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This action began when Plaintiff Burlington Industries, Inc. ("Burlington") filed a complaint against Defendant, Yanoor Corp., d/b/a Burlington Rug Corporation ("Yanoor") relating to a written asset purchase agreement ("Agreement") between the two parties. Burlington seeks to recover damages for Yanoor's alleged breach of the Agreement. Burlington also seeks a declaratory judgment of the rights of the parties, establishing that Burlington does not owe Yanoor any money under the terms of the Agreement and that Yanoor's alleged breach terminates any obligation of Burlington to provide certain equipment and services to Yanoor. Subsequent to this action, Yanoor filed suit against Burlington in the Circuit Court of Drew County, Arkansas, alleging that Burlington breached the Agreement. Burlington removed the Arkansas case to the United States District Court for the Eastern District of Arkansas. Yanoor has moved to dismiss the present action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of jurisdiction over Yanoor and improper venue. In the alternative, Yanoor moved to transfer this action to the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a) for the convenience of parties and witnesses. For the reasons set forth below, Yanoor's motions will be denied.

## FACTS

Burlington is a Delaware corporation with its principal place of business in North Carolina. Yanoor is an Arkansas

corporation with its principal place of business in Arkansas. Yanoor has no plant or office in North Carolina, no mailing address or telephone number in North Carolina, and no registered agent for service of process in North Carolina.

In December of 2000, a consultant for Saied Korhani[1] telephoned Charles Peters, Burlington's Chief Financial Officer, to explore Burlington's interest in selling its woven rug business. The consultant and Peters spoke on the telephone a number of times thereafter, and over the course of these conversations Peters explained that the woven rug business was not for sale but that Burlington's tufted rug business in Monticello, Arkansas ("the Monticello business") might be for sale. Between this time and February 14, 2001, the parties negotiated the terms of the sale from Burlington to Yanoor of the Monticello business. On February 14, 2001, Burlington and Yanoor finalized the Agreement. Burlington and Yanoor offer somewhat different versions of the facts surrounding the negotiation of the Agreement. The differences are noted below.

Burlington contends that after Peters explained to Korhani's consultant that the Monticello business might be for sale, Burlington and Yanoor negotiated the sale through two face-to-face meetings in Greensboro, North Carolina, and a series of telephone calls, faxes, and e-mails between Korhani and Burlington executives. On or about January 10, 2001,[2] Korhani traveled to Burlington's Greensboro, North Carolina, headquarters where he discussed the purchase of the Monticello business. Korhani signed a commitment letter on January 18, 2001, on behalf of defendant corporation in which Yanoor agreed to buy the Monticello business from Burlington. Korhani made a second trip to Burlington's North Carolina headquarters on February 9, 2001,[3] accompanied by Roger Miller, president of a division of the defendant corporation. According to Burlington, the primary purpose of this meeting was to make final arrangements for the February 14, 2001, closing of the Monticello deal. (Peters Aff. at ¶ 9). Burlington contends that the terms of the Agreement were finalized at the time of Korhani's visit to Burlington's headquarters in North Carolina on February 9, 2001. Burlington and Yanoor consummated the agreement at a closing in Arkansas on February 14, 2001. Burlington contends that this closing was a mere formality because all of the documents had been signed in ad-

1. Korhani is now the Chief Executive Officer of Yanoor. In December of 2000, Yanoor was not in existence. Yanoor was not incorporated until on or about January 17, 2001.

2. There is some confusion over the actual date of this meeting. In some instances in the parties' briefs the date mentioned is January 10. Other times, the date mentioned is January 11. The briefs and accompanying affidavits filed by the parties make clear that the references to the January 10 meeting and references to the January 11 meeting actually refer to the same meeting. What is certain is that on or about January 10 or 11, 2001, Korhani traveled to North Carolina and met with Burlington executives ("the January 10 meeting"). During the January 10 meeting, Korhani inquired about the woven rug business; instead, Burlington offered to sell Korhani the Monticello business. Peters' affidavit for Burlington states that Korhani and Burlington executives present at this meeting spent about four hours discussing details of the possible sale of the Monticello business. (Peters Aff. at ¶ 7.)

3. The February 9 meeting between the parties in North Carolina is sometimes referred to as occurring on February 8, 2001. The briefs and accompanying affidavits filed by the parties make clear that references to either date actually refer to the same meeting. The court will refer to this meeting as having occurred on February 9, 2001.

vance and no one from Burlington attended.

Yanoor contends that neither of the two meetings in North Carolina between Korhani and Burlington can be said to have constituted a negotiation of the Agreement. Yanoor acknowledges that at the January 10 meeting Burlington executives offered to sell the Monticello business to Korhani. However, Yanoor argues that because Yanoor was not in existence at that time this first meeting is not attributable to Yanoor for the purposes of determining personal jurisdiction. With regard to the second meeting on February 9, Yanoor admits that discussions about the Agreement for sale of the Monticello business occurred at that meeting. (1st Korhani Aff. at ¶ 16.) Nevertheless, Yanoor's description of these meetings suggest that both meetings focused primarily on subjects unrelated to the asset-purchase agreement. According to Yanoor, the Agreement "was negotiated over the phone and via the Internet and email." (Def.'s Reply in Supp. Mot. to Dismiss or Transfer at 2.) In addition, Yanoor contends that, although the material terms of the Agreement were agreed upon well before the February 9 meeting in North Carolina, the closing in Arkansas was more than a mere formality, as Burlington claims. Burlington executives signed the Agreement before the closing in Arkansas; however, Burlington was represented at the Arkansas closing by an escrow agent, Beach Abstract and Guaranty Company. Yanoor paid the purchase price of $3,890,000.00 at the closing.

Shortly after the closing of the Agreement, Korhani apparently came to believe that Burlington owed Yanoor $700,000.00 under the terms of a purchase price ad-justment provision in the Agreement. Beginning in March 2001, Korhani contacted Burlington several times through the mail and over the telephone making this contention, threatening to sue Burlington if payment of the $700,000.00 was not made to Yanoor. Burlington executives refused Korhani's demands, instead proposing that the parties enter into mediation to settle the dispute. Korhani refused to agree to mediate the issue. On July 8, 2001, Korhani gave Burlington written notice that if payment of the disputed $700,000.00 was not made to Yanoor by July 10, 2001, Yanoor would pursue legal action. On July 10, 2001, Burlington filed the present suit. On August 13, 2001, Yanoor filed its action in an Arkansas state court. Burlington subsequently removed that action to the United States District Court for the Eastern District of Arkansas. In the present case, Burlington seeks a declaratory judgment as well as damages for breach of contract.[4] Yanoor's action in Arkansas includes several claims for breach of contract as well as a fraud claim.

## DISCUSSION

### A. *Personal Jurisdiction*

■ Yanoor requests that this action be dismissed pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of personal jurisdiction. Burlington bears the ultimate burden of proof that personal jurisdiction is proper by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). However, when the court examines this issue only on the basis of motion papers, including affidavits, legal memoranda, and the allegations of the complaint, Burlington need make only a *prima facie* showing of per-

---

**4.** Yanoor argues that Burlington's breach of contract claim is meritless because Burlington failed to comply with the terms of the notice and cure provisions of the Agreement relating to default.

sonal jurisdiction. *Id.* In deciding whether Burlington has made a *prima facie* showing, "the court must construe all relevant pleading allegations in the light most favorable to [Burlington], assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

■ To determine whether personal jurisdiction is proper, the court must engage in a two-part inquiry. First, the court must determine whether the state's long-arm statute authorizes the exercise of jurisdiction under the circumstances. Second, if the court finds such authorization under the long-arm statute, it must then consider whether the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment to the Constitution. *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir.1993).

North Carolina General Statute 1–75.4(5) provides that jurisdiction exists in any action which: "a. Arises out of a promise, made anywhere to the plaintiff ... by the defendant ... to pay for services to be performed in this State by the plaintiff; or b. Arises out of services actually performed ... for the defendant by the plaintiff within this State if such performance within this State was authorized ... by the defendant."

Yanoor does not argue that this action falls outside the North Carolina long-arm statute. Indeed, Burlington has sued for the alleged breach of a promise by Yanoor to pay for administrative and other services performed by Burlington in North Carolina. Furthermore, the Supreme Court of North Carolina has interpreted this state's long-arm statute to extend to the limits of the Due Process Clause. *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 630–31 (1977). Thus the issue for the court is whether the exercise of personal jurisdic-

tion over Yanoor comports with the Due Process Clause.

To determine whether the exercise of personal jurisdiction over Yanoor comports with the Due Process Clause, the court must consider "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). These minimum contacts must be such that "maintenance of the suit [against Yanoor] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations and internal quotations omitted). When examining the sufficiency of a non-resident defendant's contacts, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.,* 35 F.3d 939, 945 (4th Cir.1994) (citations omitted). In short, jurisdiction is proper when a relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted).

In *Lesnick,* the Fourth Circuit articulated a two-part test to be applied when determining whether the due process requirements are satisfied. Under this test, the court should consider whether

(1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and

(2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and

substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Lesnick,* 35 F.3d at 945–46 (citations omitted).

■■ Under the first prong of the *Lesnick* test, the threshold level of contact necessary to connect a non-resident defendant with the forum state varies depending on the type of jurisdiction being exercised. General jurisdiction involves the exercise of jurisdiction over a defendant in a suit unrelated to the defendant's contacts with the forum state. Consequently, due process requires "continuous and systematic" contacts between the defendant and the forum in order to exercise general jurisdiction. *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 660 (4th Cir.1989).

■■ Specific jurisdiction, on the other hand, may be exercised when a cause of action arises out of a defendant's activities in the forum state. *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 n. 2 (4th Cir. 1993). In specific jurisdiction cases, a connection or " 'relationship among the defendant, the forum, and the litigation' is the essential foundation." *Helicopteros Nacionales de Colom., S. Am. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). A contract with a resident of a forum state does not automatically constitute sufficient contacts to support the exercise of specific jurisdiction, even when the dispute arises from the contract. *See Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. Such a contract must have a substantial connection with the state so that

the nature and quality of a defendant's relationship to the forum "can in no sense be viewed as random, fortuitous, or attenuated." *Id.* at 480, 105 S.Ct. 2174 (internal quotations omitted). In this case, Burlington argues that specific jurisdiction over Yanoor is proper; thus the conflict over the jurisdictional issue centers around the nature and quality of Yanoor's contacts with the State of North Carolina. As indicated above, the parties disagree over the circumstances surrounding the negotiation of the Agreement. The court must resolve such factual disagreements in favor of Burlington. *See Combs,* 886 F.2d at 676.

Yanoor has relatively few contacts with the State of North Carolina. First, Korhani, more in the role of a promoter than a corporate executive, met with Burlington executives at Burlington's North Carolina headquarters on January 10, 2001. At this meeting, Burlington offered to sell the Monticello business to Korhani. The parties spent about four hours discussing the possible sale of the business. Second, Korhani met with Burlington executives at Burlington's North Carolina headquarters on February 9, 2001. The primary purpose of this meeting was to make final arrangements for the closing of the sale. The parties also discussed other issues unrelated to the Agreement. In addition to these physical contacts with North Carolina, Yanoor negotiated many terms of the Agreement by e-mail, telephone, and fax communications to Burlington's North Carolina headquarters.

Under the terms of the Agreement, Yanoor contracted to pay for administrative services to be performed by Burlington in North Carolina. Payments by Yanoor for these services of up to $35,000.00 per month, as well as payment for Yanoor's continued use of certain leased equipment and, after three years, payment to Burlington for Yanoor's continued use of

the "Burlington Rug Co." name would be made by Yanoor to Burlington at its Greensboro, North Carolina, headquarters.

■ Analysis of the facts and circumstances noted above persuade the court that they constitute an adequate basis for the exercise of personal jurisdiction over Yanoor. Yanoor's contacts establish a "substantial connection" with the State of North Carolina, such that the nature and quality of Yanoor's relationship to the forum "can in no sense be viewed as random, fortuitous, or attenuated." *Burger King,* 471 U.S. at 479–80, 105 S.Ct. 2174 (internal quotations omitted).

■ Yanoor contends that the January 10 meeting in North Carolina involving Korhani and executives from Burlington does not constitute a contact of Yanoor for the purpose of this jurisdictional analysis because Yanoor was not yet in existence. Case law is sparse regarding whether the pre-incorporation contacts of an individual can be attributed to a corporation for the purposes of analyzing personal jurisdiction; nevertheless, there are a few cases that lend some direction to this issue. *See Rees v. Mosaic Techs., Inc.,* 742 F.2d 765, 768 (3d Cir.1984) (recognizing the lack of case law governing jurisdiction of pre-incorporation activities); *see also Chase v. Pan–Pacific Broad., Inc.,* 617 F.Supp. 1414 (D.D.C.1985). These cases stand for the proposition that pre-incorporation activities of promoters that are later ratified by the corporation may be considered in evaluating personal jurisdiction. *Rees,* 742 F.2d at 769; *Chase,* 617 F.Supp. at 1424.

The actions of Korhani taken during the January 10 meeting led to the negotiation and subsequent execution of the Agreement between Yanoor and Burlington. Korhani is the Chief Executive Officer of the Yanoor and, according to his affidavit, he signed a commitment letter on January 18, 2001, in behalf of Yanoor in which Yanoor agreed to purchase the Monticello business from Burlington. Yanoor was incorporated the day before, January 17, 2001. Draft agreements had apparently been prepared at or immediately following the January 10, 2001, meeting, and Korhani thereafter finalized financing arrangements to buy the Monticello business in the name of the defendant corporation. It is not unreasonable to attribute Korhani's pre-incorporation activities to the defendant corporation, which was formed only one week after his visit to Greensboro.

Even excluding the January 10 meeting from the jurisdictional analysis, Yanoor's other contacts evidence a purposeful direction of activities toward the forum state that provide a sufficient basis for the exercise of personal jurisdiction over Yanoor. In addition to the numerous telephone calls, faxes, and e-mails between the parties, Korhani's presence at the February 9, 2001, meeting was clearly a physical contact by Yanoor's Chief Executive Officer with the forum. Moreover, this contact was related to the present cause of action because the primary purpose of this meeting was to finalize arrangements for the closing of the Agreement. (Peters Aff. at ¶ 9.) In addition, the Agreement provided that Burlington would perform services in North Carolina for the benefit of Yanoor and that Yanoor would send payments to Burlington for these services. In contracting for these services, as well as for the use of leased equipment and the Burlington Rug Company name, Yanoor purposefully directed its activities toward the forum state, and "should reasonably anticipate being haled into court" in North Carolina. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Requiring Yanoor to litigate in North Carolina an alleged non-payment of its contractual obligations as well as other issues involving interpretation of the Agreement does not offend

any reasonable notions of fair play and substantial justice.

The Fourth Circuit decisions in *English & Smith v. Metzger,* 901 F.2d 36 (4th Cir.1990), and *Hirschkop & Grad, P.C. v. Robinson,* 757 F.2d 1499 (4th Cir.1985), lend support to the exercise of personal jurisdiction over Yanoor. In *English & Smith,* the Fourth Circuit held that a California attorney who initiated and entered into a fee-sharing arrangement with a Virginia attorney had sufficient contacts with the Commonwealth of Virginia such that the exercise of specific jurisdiction over the California attorney comported with due process requirements. 901 F.2d at 39–40. The exercise of jurisdiction was based only upon the business relationship between the two parties, various communications that the California attorney transmitted to the forum state, and the fact that services were performed by the plaintiff in the forum state. *Id.* at 39. Although the facts of *English & Smith* vary from the present case in that the fee-sharing arrangement was executed in the forum, the court of appeals did not find this significant. *Id.* at 39 n. 4. Furthermore, in the present case, the Yanoor's CEO had a physical presence in the forum, which did not occur in *English & Smith.*

In *Hirschkop,* the Fourth Circuit upheld the exercise of jurisdiction over a client of the plaintiff law firm. 757 F.2d at 1502–03. The defendant had made two brief visits to the forum, had transmitted various communications into the forum, and had mailed payments to the law firm in the forum. *Id.* at 1503. The defendant's visits into the forum were made for the purpose of discussing possible representation by the law firm and details relating to the representation. *Id.* The sum total of the defendant's contacts in *Hirschkop* were quite similar to Yanoor's contacts with North Carolina in the present case. Ac-cordingly, the exercise of personal jurisdiction over Yanoor properly comports with the requirements of due process.

**B.** *Venue*

Yanoor has also moved to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue. 28 U.S.C. § 1391(a)(1) provides that a civil action founded on diversity of citizenship may be brought in "a judicial district where any defendant resides." Section 1391(a)(2) provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As the court has noted above, Yanoor is subject to jurisdiction in this district. Therefore, Yanoor "resides" in this district, making this district a proper venue. 28 U.S.C. § 1391(c) ("[A] defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."). Also, the events or omissions giving rise to Burlington's claim occurred in North Carolina in that Burlington alleges that Yanoor did not pay for administrative and other services performed by Burlington in its Greensboro, North Carolina, headquarters. Therefore, venue is proper in the Middle District of North Carolina.

**C.** *Transfer*

In the alternative, Yanoor requests that, pursuant to 28 U.S.C. § 1404(a), the court transfer this action to the United States District Court for the Eastern District of Arkansas. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In considering a motion to transfer under 28

U.S.C. § 1404(a), a plaintiff's choice of forum is accorded great weight, *see Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and " 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' " *Collins v. Straight, Inc.,* 748 F.2d 916, 921 (4th Cir.1984) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Additionally, a "court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another." *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.,* 841 F.Supp. 719, 721 (M.D.N.C.1993) (citation omitted). Factors to be considered in deciding a motion to transfer venue are a plaintiff's initial choice of venue, the respective residences of parties, the ease of proof, the availability of compulsory process, the costs of obtaining attendance of willing witnesses, the relative time and expense of travel, and the interest of localized litigation. *See Regent Lighting Corp. v. Galaxy Elec. Mfg., Inc.,* 933 F.Supp. 507, 513 (M.D.N.C.1996) (citing *Tools USA,* 841 F.Supp. at 721).

Yanoor argues that Burlington's choice of venue should be accorded little, if any, weight in the analysis because Burlington filed this "pre-emptive declaratory judgment action in an effort to force [Yanoor] into litigation in a distant forum." (Def.'s Mem. in Supp. of Mot. to Dismiss or Transfer at 14.) Yanoor characterizes Burlington's breach of contract claim as meritless and contends that Burlington's declaratory judgment action is simply a race to the courthouse in order to obtain a favorable forum for the adjudication of the dispute between the two parties.

The merits of Burlington's contract claim depend upon factual issues that cannot be adequately developed until at least the summary judgment stage. Thus the court will assume the validity of Burlington's contract claim for the purposes of Yanoor's motion to transfer. With regard to Burlington's declaratory action, the facts and circumstances surrounding this claim do not persuade the court that it is simply a pre-emptive strike by Burlington in order to gain a favorable forum. First, the facts indicate that Yanoor threatened to pursue legal action against Burlington as early as March of 2001, approximately four months before Burlington actually filed the present action. Thus Burlington's action cannot be characterized as motivated solely by Yanoor's intent-to-sue letter of July 7, 2001. Second, Burlington's action was prompted in part by Yanoor's rejection of Burlington's repeated efforts to pursue a non-judicial resolution to the parties' dispute. Third, Burlington filed a breach of contract claim in addition to its declaratory action. Fourth, Burlington filed the present action thirty-four days before Yanoor filed its action. These facts and circumstances, taken together, demonstrate that the present action was not simply a pre-emptive declaratory action filed only as a means of forum shopping.[5] Therefore, Burlington's initial choice of venue is accorded great weight, and unless the other factors weigh strongly in favor of Yanoor, Burlington's choice of forum should not be disturbed. *See Collins,* 748 F.2d at 921.

The remainder of Yanoor's arguments in support of transfer focus primarily upon the convenience of the parties and wit-

---

**5.** "There is nothing inherently evil about forum-shopping. The statutes giving effect to the diversity jurisdiction under the Constitution, 28 U.S.C. § 1332 (jurisdiction) and § 1391 (venue) are certainly implicit, if not explicit, approval of alternate forums for plaintiffs." *Goad v. Celotex Corp.,* 831 F.2d 508, 512, n. 12 (4th Cir.1987).

nesses.[6] Yanoor notes that it is an Arkansas corporation with its principal place of business in the Eastern District of Arkansas. Yanoor contends that all witnesses regarding the execution and performance of the Agreement are located in the Eastern District of Arkansas and that many of the available documents regarding the execution and performance of the Agreement are located in that district. Yanoor argues that to transport these witnesses and documents to North Carolina would impose upon Yanoor a significant expense and inconvenience. In addition, Yanoor identifies several potential witnesses who it alleges are outside the subpoena power of this court but who would be subject to summons in the Eastern District of Arkansas.

Burlington counters by arguing that its operations and employees are located in North Carolina and that it has a manifest interest in litigating its case in North Carolina. Burlington identifies several potential witnesses who reside in North Carolina. Thus Burlington argues that convenience factors do not support transfer because neither party will find the other's forum choice entirely convenient.

The court finds that the convenience of parties and witnesses and the interests of justice do not weigh heavily in favor of either party. Transferring this case to the Eastern District of Arkansas would merely shift the expense of transporting documents and witnesses from Yanoor to Burlington. Therefore, Yanoor's motion to transfer will be denied.

## CONCLUSION

Because Yanoor purposefully directed its activities toward North Carolina and this litigation results from alleged injuries that arise out of or relate to those activities, Yanoor received fair warning that its activities might subject it to suit in this state. *See Burger King*, 471 U.S. at 472, 105 S.Ct. 2174. Venue is also proper in this district under 28 U.S.C. §§ 1391(a)(1) and (a)(2). The convenience of parties and witnesses and the interests of justice do not favor transfer of this action to the Eastern District of Arkansas. Yanoor's motion to dismiss under Rules 12(b)(2) and 12(b)(3), Federal Rules of Civil Procedure, for lack of jurisdiction and improper venue and, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a) will be denied.[7]

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Yanoor's motion [Doc. # 6] to dismiss under Rules 12(b)(2) and 12(b)(3), Federal Rules of Civil Procedure, for lack of jurisdiction and improper venue and, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED.**

IT IS FURTHER ORDERED that Burlington's motion [Doc. # 20] for leave to

---

6. Yanoor also suggests that the interests of localized litigation favors transfer to the Eastern District of Arkansas because the Agreement is governed by Arkansas law. However, this choice of law provision is only one factor in the analysis and "far from a compelling factor." *See Riviera Fin. v. Trucking Servs., Inc.,* 904 F.Supp. 837, 839 (N.D.Ill.1995) (citation omitted).

7. On October 12, 2001, Burlington filed a motion for leave to file a sur-reply brief and two accompanying affidavits. Because the court's decision is based only on documents in the record as of September 25, 2001, the date the case was submitted to the court for ruling, Burlington's motion will be denied as moot.

file a sur-rely brief and two accompanying affidavits is **DENIED** as moot.