ENGLISH & SMITH, a Virginia partnership, Plaintiff–Appellee,

v.

Michael H. METZGER, Defendant–Appellant.

No. 89–1418.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1989.

Decided April 17, 1990.

Jeffrey Dwight Ullman, Ullman & Holtzman, New York City, for defendant-appellant.

David Benjamin Smith, English & Smith, Alexandria, Va., for plaintiff-appellee.

Julian Karpoff, Karpoff, Title & Mitnick, Arlington, Va., on brief, for defendant-appellant.

Before WIDENER, CHAPMAN, and WILKINSON, Circuit Judges.

WIDENER, Circuit Judge:

Michael Metzger appeals from the district court's entry of summary judgment against him on plaintiff's contract claim. Metzger's only assignment of error challenges the district court's exercise of in personam jurisdiction. We affirm.

## I.

In late 1986 Michael Metzger, a California lawyer, undertook to represent Robert Pemberton in a criminal prosecution involving drugs and a related civil forfeiture proceeding, both of which were pending in the United States District Court for the Northern District of California. In November 1986 Metzger telephoned David B. Smith, a partner in the plaintiff law firm, and agreed with Smith that Smith would become his co-counsel in the Pemberton forfeiture case on a contingent fee basis. Smith, a Virginia lawyer whose offices are located in Alexandria, Virginia, is a recognized authority on forfeiture law and is the author of the only book on the subject.[1] To memorialize their arrangement, Metzger and Pemberton signed a contingent fee agreement in San Francisco and mailed it to Smith. Smith signed the agreement in Alexandria and mailed it back to Metzger.

The contingent fee agreement provided that, if Metzger and Smith were successful in preventing the forfeiture of any or all of the property described in the agreement, they would receive fifty percent of the property or fifty percent of its fair market value, with the other fifty percent going to Pemberton. Metzger and Smith orally agreed that they would divide their share of any recovery equally; that is, Metzger and Smith each would receive twenty-five percent of the total property saved, or twenty-five percent of its value.

Smith performed all his work in Virginia in connection with the defense of the forfeiture case, and Metzger performed all his work in California. As a part of their work in defending the case, Smith and Metzger also exchanged several telephone calls and letters between Virginia and California.

On October 23, 1987, Pemberton, Metzger, and the government entered into a plea agreement that effectively settled both the criminal case and the forfeiture proceeding. A stipulation of settlement was filed in the forfeiture proceeding on November 18, 1987. The settlement provided that Pemberton would forfeit all property in issue here except $80,000,

---

1. D. Smith, *Prosecution and Defense of Forfei-* *ture Cases* (1988).

which was to be paid out of proceeds from the sale of a wine collection that was part of the seized property.

After the funds were received,[2] Metzger contended that the forfeiture case was settled solely as a result of his work in the related criminal case and refused to pay Smith his $20,000 share of the recovery. Smith then brought this breach of contract suit in the United States District Court for the Eastern District of Virginia. The district court entered summary judgment for Smith, finding that the contingent fee agreement applied to the settlement and that Smith was entitled to twenty-five percent of the recovery. In this appeal, Metzger contests only the district court's denial of his motion to dismiss based on lack of personal jurisdiction.[3]

## II.

■ We have noted that, when evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir.1982). First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution. To this inquiry we now turn.

■ The relevant subsection of the Virginia long-arm statute here in issue, Va. Code Ann. § 8.01–328.1(A)(1), is the same subsection that we addressed in *Peanut* and most subsequent cases involving the Virginia statute. It provides that:

A.  A court may exercise personal jurisdiction over a person, who acts directly

or by an agent, as to a cause of action arising from the person's:

1.  Transacting any business in this Commonwealth. . . .

Metzger does not deny that Smith's cause of action arose from the same activities which the district court relied upon to support jurisdiction. Rather, Metzger asserts that those activities did not amount to transacting business under the statute.

■ In defining the term transacting business, we are mindful that the purpose of the Virginia long-arm statute is to extend jurisdiction to the extent permissible under the due process clause. *Peanut*, 696 F.2d at 313; *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 238 S.E.2d 800, 802 (1977). Under subsection (A)(1) of the long-arm statute, therefore, "a single act by a nonresident which amounts to 'transacting business' in Virginia and gives rise to a cause of action may be sufficient to confer jurisdiction upon [Virginia] courts." *Danville Plywood*, 238 S.E.2d at 802.

Metzger's contacts with Virginia are, in our opinion, sufficient to constitute the transaction of business under the statute. In determining in *Peanut* that the defendant's acts amounted to transacting business, we stated:

Although [defendant] argues that it had no contacts with Virginia concerning the disputed contract, the modification letter, which became a part of the basic contract was addressed to and received by [plaintiff] in Virginia, telephonic negotiations occurred with one of the participants located in Virginia, and numerous written communiques between the parties were sent to and received in Virginia. There was sufficient 'contracting' in Virginia to amount to the transaction of

---

2.  Pemberton took $20,000 worth of wine as part of Pemberton's share of the settlement, and the government later issued a check to Metzger for $60,000, which represented the balance of the $80,000 settlement.

3.  Although Metzger conceded at oral argument that the only issue he raised on appeal is the jurisdictional question, and although that is the only issue presented in his brief and described

as such, in the next to last paragraph of his brief Metzger asserts in conclusory fashion that the existence of genuine issues of material fact made the district court's entry of summary judgment inappropriate. We suggest that such a presentation does not inspire confidence, and we agree with the district court that "[t]here is not one shred of evidence . . . to support Defendant's claim."

business from which the cause of action arose. *Peanut*, 696 F.2d at 314. The facts here are indistinguishable from those in *Peanut* for all practical purposes.

Metzger initiated the relationship with Smith, knowing that Smith was a Virginia lawyer who likely would do the requested work in Virginia. Metzger contracted with Smith in Virginia, first by telephone and later in a writing that Smith, as the last party to sign, executed in Virginia.[4] Smith performed all of his duties under the contract in Virginia. Finally, the parties exchanged numerous telephone calls and written communications. Few examples of transacting business are more classic than Metzger's decision to associate a Virginia law firm on a case and his subsequent dealings with that firm. Because Metzger transacted business in Virginia, and because Smith's cause of action arose directly from those activities, the Virginia long-arm statute is satisfied.

## III.

Having determined that the Virginia statute would confer jurisdiction over Metzger, we must decide whether that exercise of jurisdiction violated due process. The district court's assumption of jurisdiction did not violate due process, of course, if Metzger had enough "minimum contacts" with Virginia so that requiring him to defend his interests there did not "offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Metzger argues that he did not have the requisite minimum contacts with Virginia because he conducted his business with Smith solely by telephone and through the mails, and because he had no expectation that Smith would do the work in Virginia. We disagree.

The relevant question is not where the contacts predominate, but only whether enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process. In *Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499 (4th Cir.1985), we upheld jurisdiction under the long-arm statute over a Virginia law firm's out-of-state client. The client's contacts with the Hirschkop firm were essentially identical to Metzger's here, except that the client made two brief personal visits to Virginia. Our decision in *Hirschkop & Grad* did not rely on the visits, however, but properly focused on the contacts "considered together." 757 F.2d at 1503. Moreover, the Supreme Court has made it clear that lack of physical presence is not dispositive: "[j]urisdiction ... may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original).

Instead, because the exercise of personal jurisdiction is based upon traditional notions of fairness, the Supreme Court has determined that

> [w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

471 U.S. at 472, 105 S.Ct. at 2182 (citations omitted). The purposeful direction of activities toward the forum is present here. Metzger initiated contact with Smith in Virginia, entered into contracts with Smith by

---

4. Metzger's view of the parties' contractual activities apparently is that, because the original agreement was reached by telephone, a contract was formed somewhere between California and Virginia. Naturally, Metzger also argues that the first contract is the significant one and dismisses the written agreement which Smith signed in Virginia as a "memorandum ... without jurisdictional significance" that "simply memorialized the parties' contract." Although it appears to us that both contracts were made in Virginia and that Virginia law applies, the excerpt from *Peanut* set forth in the text above makes plain that such an analysis is unnecessary. What is more important is the extent of Metzger's contacts with Virginia, not whether, as a technical matter, the contracts were formed there and Virginia law governs.

virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia while the two worked on the Pemberton forfeiture case.[5] Metzger's intentional contacts with the State were enough that he could "reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and we are of opinion that the district court's exercise of jurisdiction did not offend due process.

The judgment of the district court is accordingly

AFFIRMED.

---

**5.** Metzger also associated Smith to assist him in two other cases on which he was working. Smith alleged that Metzger breached those contracts as well, and his complaint originally sought damages for the breach of all three contracts. The parties eventually settled their dispute over the other two contracts, however, and agreed to dismiss counts I and III of Smith's complaint. Nevertheless, Smith contends that

Metzger's contacts with Virginia with respect to the other two cases may be considered to support jurisdiction as to the remaining count in his complaint. Because we believe Metzger's contacts in connection with the Pemberton case alone are sufficient to support specific jurisdiction, we need not address the relevance of the rest of Metzger's relationship with the plaintiff.