66 F.3d 316
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Reese I. JOYE; Stanley Claypoole; George J. Kefalos,
Plaintiffs-Appellees,
v.
Henry T. HEUER, Defendant-Appellant.
 No. 93-2004.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 6, 1994.
Decided: Sept. 19, 1995.
 
 ARGUED: Henry T. Heuer, PRINCE & HEUER, Los Angeles, CA, for Appellant. D. Kay Tennyson, WISE & COLE, P.A., Charleston, SC, for appellees. ON BRIEF: Andrew K. Epting, Jr., WISE & COLE, P.A., Charleston, SC, for Appellees.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and JACKSON, United States District Court Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This case involves an attorneys fee dispute between attorney Henry T. Heuer of California and attorneys Reese I. Joye, Jr., Stanley Claypoole, and George J. Kefalos (JCK) of Charleston, South Carolina. Heuer appeals from the district court judgment in favor of JCK, awarding them one-third of the net attorneys fees that Heuer received in the representation of Mary Ann Parker, pursuant to an oral agreement between Heuer and JCK regarding the fee splitting. On appeal Heuer's principal claims are that the district court lacked jurisdiction; the oral agreement is unenforceable for various reasons; and the district court erred in denying his motion for recusal. We affirm. On July 7, 1981, William Parker, a resident of South Carolina, and his passenger were killed in California when their tractor-trailer collided with a van. Parker had rented the tractor-trailer from the Hertz Corporation. Parker's wife, Mary Ann Parker, employed Joye, who had been her lawyer prior to the accident. Joye immediately traveled to California to investigate the accident. After two trips to California in which he interviewed witnesses, gathered evidence, and inspected the truck, Joye concluded that brake failure caused the accident and entered into a written fee agreement with Mrs. Parker. Subsequently, the estate of the deceased driver of the van brought suit in California against Mr. Parker's estate, as did Mr. Parker's deceased passenger in South Carolina.[1] At Joye's request, Mrs. Parker flew to California to retain an attorney, whom Joye had already contacted and to whom he had sent her file, to defend against the suit there. Joye had been unable to get Hertz's insurance defense counsel to defend Mrs. Parker, and the statute of limitations in California was about to run. Upon meeting with Mrs. Parker, the California attorney told her that he was unable to take the case and gave her the file. Pursuant to phone conversations between Mrs. Parker in California and Joye in South Carolina, Joye sent Mrs. Parker to speak with the firm of Harney & Moore. They, too, were unable to take the case, but recommended Heuer. Joye told Mrs. Parker to go see Heuer, which she did, and he agreed to represent her. Heuer and Kefalos spoke by telephone about Heuer's proposed representation of Mrs. Parker's interests in the California litigation. Kefalos informed Heuer that JCK was filing a cross-claim and counter-claim in the South Carolina case. Contemporaneous with this conversation, Kefalos made the following notation: "not intd to deprive of sh of proceeds in lawsuit," which Kefalos testified meant that Heuer did not intend to deprive JCK of their share of the proceeds in the lawsuit. During this conversation, Heuer and Kefalos agreed in general terms to share the attorneys fees, and agreed to notify each other prior to settlement of either the California or South Carolina cases. Heuer did not present proof of a written fee agreement with Mrs. Parker.
 
 
 2
 Joye filed pleadings in the South Carolina case and proceeded to prepare for trial by arranging for testimony from witneses, including economic and truck experts, the California patrolmen who investigated the accident, and a Hertz employee familiar with Hertz's truck maintenance procedures. In the meantime, Heuer filed suit in California and proceeded to prepare for trial there. Joye assisted in the California case by representing Mrs. Parker at depositions held in South Carolina, and the two attorneys shared information.
 
 
 3
 The South Carolina case was coming up for trial in September of 1983. Joye and Heuer compared the difference in jury verdicts for wrongful death in California and South Carolina, and the fact that, at that time, California had comparative negligence while South Carolina law held that contributory negligence was a bar to recovery. In a telephone conversation on August 11, 1983, they agreed that Joye would dismiss the South Carolina suit in favor of pursuing the California suit and agreed that Heuer would try the case in California, with Joye helping in South Carolina and receiving one-third of any attorneys fee from the California suit. Joye confirmed this agreement by letter to Heuer dated August 13, 1983, and dismissed the South Carolina suit.
 
 
 4
 The California case went to trial in 1987 and the jury verdict of $900,000 was affirmed on appeal in 1989. When they did not receive a share of the attorneys fee, JCK filed a diversity suit in South Carolina, alleging that Heuer owed them one-third of the fee, pursuant to the oral agreement of August 11, 1983.[2] A non-jury trial was held on April 7, 1992. The district court applied South Carolina's choice of law rule to determine that California law governed the issue of the alleged oral agreement between the parties and found that Heuer and Joye by oral contract agreed to divide the attorneys fees during the telephone conversation on August 11, 1983. The district court further determined that the California Rules of Professional Conduct, Rule 2-108, which prohibits fee splitting without full disclosure that a fee would be split and written client consent, existed for the benefit of the client and did not invalidate the oral agreement at issue. The oral agreement obligated Heuer to give one-third of the net fee to JCK, an amount determined by the district court to be $141,669.95. The district court awarded JCK $185,206.58, including pre- and postjudgment interest. Heuer made post-judgment motions, including a motion that the district court recuse itself, since one of the court's former law clerks was employed by the court during the first four months this action was pending and then later took part in the trial as counsel for JCK. The district court denied the motion for recusal. Heuer appealed.
 
 
 5
 Heuer challenges the jurisdiction of the district court, claiming that it lacked personal jurisdiction, pursuant to South Carolina's long arm statute, S.C.Code Ann. Sec. 36-2-803,[3] in that he did not purposefully direct his efforts toward residents of the forum State, as required by Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).[4] In English & Smith v. Metzger, 901 F.2d 36 (4th Cir.1990), we upheld jurisdiction under Va.Code Sec. 8.01-328.1(A)(1),[5] a jurisdictional statute that does not differ in any meaningful way from the statute at issue, in factual circumstances very similar to the case now before us. In English, an attorney in California and an attorney in Virginia contracted with a client in California for 50% of any recovery achieved for the client in contesting a civil forfeiture action in California and orally agreed between themselves to split the fee. English, 901 F.2d at 37. We applied the two-step analysis enunciated in Peanut Corp. of America v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir.1982), first determining that the statutory language applied to the defendant California attorney, and second, that the statutory assertion of jurisdiction was consistent with the due process clause of the Constitution. 901 F.2d at 38, 39. In concluding that due process was not offended by the district court's exercise of jurisdiction over the defendant, we found purposeful direction of activities toward the forum present where:
 
 
 6
 Metzger initiated contact with Smith in Virginia, entered into contracts with Smith by virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia while the two worked on the Pemberton foreclosure case.
 
 
 7
 English, 901 F.2d at 39-40.
 
 
 8
 Because South Carolina has determined that its long-arm statute extends personal jurisdiction to the limits allowed by federal due process,[6] "our normal two-step inquiry merges into one," Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir.1993). This inquiry focuses on "whether the defendant purposefully established 'minimum contacts' in the forum state," and, if so, "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Ellicott, 995 F.2d at 477 (quoting Asahi Metal Indus. v. Superior Court of Cal., 480 U.S. 102, 108-109 (1987) (plurality opinion), quoting Burger King, 471 U.S. at 474).
 
 
 9
 We conclude that the exercise of jurisdiction here was proper under the statute and comports with due process. First, Heuer transacted business in South Carolina; represented a South Carolina resident, Mrs. Parker; orally agreed to a split of fees in her case with her South Carolina counsel; corresponded by mail and telephone with Joye, Mrs. Parker's South Carolina counsel; and attended in South Carolina depositions taken in the California action. These activities by Heuer place him within the reach of South Carolina's long arm statute, both as to transacting business in South Carolina and entering into a contract to be performed in whole or in part by Heuer or Joye in South Carolina, and satisfy the purposeful minimum contacts requirement. And we note in passing Heuer's physical presence in South Carolina in connection with the service for which he was being paid, which is an added reason to support jurisdiction under Burger King, 471 U.S. at 476.
 
 
 10
 We do not think there is any meaningful distinction between this case and English and are further of opinion that Heuer's contacts with South Carolina are sufficient to satisfy "traditional notions of fair play and substantial justice," International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted), and to give fair warning to Heuer that he could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).
 
 
 11
 Heuer also claims the oral agreement is unenforceable under California Civil Code Sec. Sec. 1607, 1667, which provide that contracts are not lawful which are contrary to an express provision of law or contrary to the policy of express law, though not expressly prohibited. See Kallen v. Delug, 203 Cal.Rptr. 879, 884 (Cal.Ct.App.1984). Heuer contends that the oral agreement splitting fees is unenforceable as an unlawful contract because the agreement contravened California Rules of Professional Conduct, Rule 2-108,[7] which prohibits fee splitting unless full disclosure was made and the client consented in writing. While Mrs. Parker did not consent in writing to the fee-splitting arrangement between Heuer and Joye, she believed that both lawyers represented her and she knew that her attorneys fees would not increase because of the association of Heuer, although she was not aware of the specific percentages involved in the fee-splitting arrangement.
 
 
 12
 The district court determined that Rule 2-108 exists for the benefit of the client, relying on Cezares v. Szaenz, 256 Cal.Rptr. 209, 211, n. 5 (Cal.Ct.App.1989), and, since Mrs. Parker was not a party to the suit, it should not be a bar to enforcement of the oral agreement. We agree with that ruling.
 
 
 13
 Reviewing the district court's refusal to recuse itself for abuse of discretion, United States v. Carmichael, 726 F.2d 158, 160 (4th Cir.1984), we fail to discern any abuse of discretion where the former law clerk never did any work on the case or even saw the file during her clerkship.
 
 
 14
 We have touched on, with enough particularity, all of the assignments of error we think deserve special mention. The brief contains eight assignments of error, three of which are divided into ten (total) subparts, and one of the subparts into a sub-subpart. Some of them are not applicable because the case was decided under California rather than South Carolina law, and some because we affirm the district court's decision that there was an enforceable contract rather than quantum meruit recovery. The brief does raise the question that the oral agreement was not supported by any lawful consideration (meaning that it was coerced) or was supported only by past consideration and was invalid for those reasons. We are of opinion the record simply does not support either contention.
 
 
 15
 In all events, we have considered all of the assignments of error and are of opinion they are either without merit or do not apply.
 
 
 16
 The judgment of the district court is accordingly
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Besides Mr. Parker's estate, these suits also named a corporation owned by Mrs. Parker, on whose behalf Mr. Parker apparently rented the tractor-trailer involved in the accident
 
 
 [2]
 The complaint was amended to include a claim based on quantum meruit. Because we uphold the district court's judgment based on the agreement between the parties, we do not reach Heuer's issues pertaining to the district court's alternate holding regarding the quantum meruit claim
 
 
 [3]
 S.C.Code Ann. Sec. 36-2-803 provides:
 (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
 (a) transacting any business in this State
 ....
 (g) entry into a contract to be performed in whole or in part by either party in this State.
 
 
 [4]
 Heuer argues that neither general nor specific jurisdiction is satisfied in this case. Since it is clear that this case involves specific jurisdiction, we need not address Heuer's objections to the exercise of general jurisdiction. See Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir.1989), for the distinction between specific and general jurisdiction
 
 
 [5]
 Va.Code Sec. 8.01-328.1(A)(1) provides that "a court may exercise personal jurisdiction over a person ... as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth."
 
 
 [6]
 See Atlantic Soft Drink Co. v. South Carolina Nat'l Bank, 336 S.E.2d 876, 878 (S.C.1985)
 
 
 [7]
 Rule 2-108(A), which was in effect in the following form from January 1, 1979 until repealed effective May 27, 1989, stated:
 A member of the State Bar shall not divide a fee for legal services with another person licensed to practice law who is not a partner or associate in the member's law firm or law office, unless:
 (1) The client consents in writing to employment of the other person licensed to practice law after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and
 (2) The total fee charged by all persons licensed to practice law is not increased solely by reason of the provision for division of fees and does not exceed reasonable compensation for all services they render to the client.