**Motley RICE, LLC; and MRRM, P.A., Plaintiffs,**

v.

**BALDWIN & BALDWIN, LLP, Defendant.**

**C.A. No. 2:07–01368–PMD.**

United States District Court, D. South Carolina, Charleston Division.

July 30, 2007.

Phyllis W. Ewing, William Howell Morrison, Moore and Van Allen, Charleston, SC, for Plaintiffs.

Mark Hedderman Wall, Elmore and Wall, Charleston, SC, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Defendant Baldwin & Baldwin, LLP's ("Defendant" or "Baldwin firm") Motion to Dismiss. A hearing was held on July 26, 2007 at 10:30 a.m.[1] For the reasons set forth herein, the court denies Defendant's

---

1. The court notes that neither party presented evidence at the hearing; the court simply heard the parties' arguments.

motion but transfers the case to the United States District Court for the Eastern District of Texas.

## BACKGROUND

Plaintiffs Motley Rice, LLC and MRRM, P.A. ("Plaintiffs" or "Motley Rice") brought this action in the Court of Common Pleas for Charleston County on March 26, 2007. Defendants removed the action to this court on May 14, 2007 pursuant to diversity jurisdiction.[2] (Notice of and Petition for Removal at 1.) The dispute in this action arose because of co-counsel and fee-sharing agreements arranged between Plaintiffs and Defendant. (Compl.¶ 4.) Allegedly, in the late 1980s or early 1990s, Plaintiffs' predecessors associated Defendant to work on different sets of asbestos personal injury cases that were filed in state courts of Texas. (Compl.¶ 8.) The first group of cases, known as the "Murphy/Webb" cases, involved the "assertion by numerous Canadian citizens of injury claims from exposure to asbestos and/or asbestos-containing products." (Compl.¶ 8.) In reference to these cases, Plaintiffs assert that Defendant "failed to perform on its work-sharing obligations ... as to some of the unresolved state court filings." (Compl.¶ 11.)

Additionally, the second set of cases, referred to as "Northern District" cases, were all ordered to asbestos Multi–District Litigation ("MDL"), which Plaintiffs say precluded Defendant from actually performing on these cases. (Compl.¶ 12–13.) Thus Plaintiffs believe there has been "a failure of consideration effectively defeating the object of the fee-sharing contract and entitling Motley Rice to a rescission of any fee-sharing agreement that may be determined to exist with Defendant." (Compl.¶ 16.)

Also at issue in this action is the last set of cases where there existed a relationship between these two firms, the "Archondakis" cases, involving Canadian asbestos clients as well. (Compl.¶ 23.) Plaintiffs assert that although the two firms did enter into a fee-sharing agreement with respect to these cases, Defendant performed no trial work.

Plaintiffs seek to "clarify, reform, and/or rescind the terms of the co-counsel/fee-sharing agreements with Defendant." (Compl.¶ 25, 28.) Plaintiffs consider Defendant's failure to perform in certain obligations as co-counsel to be a material breach of contract that led to injury of Plaintiffs because the attorneys at Motley Rice had to use time and resources to perform what Defendant was contracted to perform. (Compl.¶ 31–32.) The relief requested by Plaintiffs is both declaratory and monetary. (Compl.¶ 33.)[3]

---

**2.** Plaintiffs are a "Limited Liability Company and a Professional Association organized and existing pursuant to the laws of the State of South Carolina," and Defendant is a "Limited Liability Partnership organized and existing pursuant to the State of Texas with its principal place of business in the State of Texas." (Notice of and Petition for Removal at 1.)

**3.** The relief sought by Plaintiffs appears to be primarily declaratory relief. Plaintiffs seek a declaration regarding, *inter alia,* "where there exist enforceable contracts for fee-sharing and the rights and obligations of the parties to each," "clarification of ambiguities in the terms of the co-counsel agreements, including, if need be, the striking of terms

which violate public policy," and "reformation of any fee sharing contract between the parties to the extent the Court finds it to be non-compliant with applicable ethical rules and/or against public policy." (*See* Compl. at 6–7.) Plaintiffs also seek "disgorgement of prior fee payments to Defendant, to the extent the Court determines that past fee sharing with the Defendant on any group of cases has been unethical and/or in breach of an enforceable contract between the parties." (Compl. at 7.) The prayer clause of the Complaint requests the "Court inquire into the matters set forth herein above and order such equitable remedies and/or actual monetary damages as are necessary to make the co-counsel contracts and fee-sharing agreements

On May 14, 2007, Defendant filed a Motion to Dismiss under Rule 12(b)(2) and/or Rule 12(b)(3) of the Federal Rules of Civil Procedure. Alternatively, Defendant moves to dismiss under federal law on the basis that this action is duplicative of an action pending in the United States District Court for the Eastern District of Texas.[4] Should the court deny the Motion to Dismiss, Defendant moves to transfer the venue to the Eastern District of Texas "for the convenience of the witnesses and in the interest of justice." (Mem. in Supp. of Mot. to Dismiss at 1.) In its Motion to Dismiss, Defendant argues this court does not have personal jurisdiction over it because (1) "[t]he Baldwin Firm lacks sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction," and (2) "[t]he exercise of personal jurisdiction over The Baldwin Firm would be unfair and unreasonable." (Mem. in Supp. of Mot. to Dismiss at 3–7.) Lastly, Defendant claims that "[e]ven if this Court were to determine not to dismiss the case and that personal jurisdiction over The Baldwin Firm is appropriate in South Carolina, ... venue [should] be transferred to the United States District Court of the Eastern District of Texas, Marshall Division, based upon 28 U.S.C. § 1404(a)." (Mem. in Supp. of Mot. to Dismiss at 8.)

### STANDARD OF REVIEW

■ To grant a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court must find that it has no personal jurisdiction over the defendant. *See* Fed.R.Civ.P. 12(b)(2). When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir.1997). The jurisdictional question "is one for the judge," and the plaintiff must "prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993).

> If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when ... the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

*Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

■ To grant a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the court must find that the venue is improper. *See* Fed.R.Civ.P. 12(b)(3). When a defendant objects to venue under Rule 12(b)(3), plaintiff bears the burden of establishing that venue is proper. *See Plant Genetic Sys., N.V. v.*

---

between the parties lawful, equitable, and enforceable." (Compl. at 7.)

**4.** The "duplicative" action referred to by Defendant is *Baldwin & Baldwin, LLP v. Motley Rice, LLC; Joseph F. Rice; Ness, Motley, Loadholt, Richardson & Poole, P.A.; Ness,* *Motley, Loadholt, Richardson, Poole, LLC; and MRRM, P.A.,* No. 2–07 CV–022 TJW. This is a pending action that was filed on January 18, 2007 in the United States District Court for the Eastern District of Texas, Marshall Division.

*Ciba Seeds, Mycogen Plant Sci., Inc.*, 933 F.Supp. 519, 526 (M.D.N.C.1996) (citing *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir.1979)).

## ANALYSIS

### A. Rule 12(b)(2) Personal Jurisdiction

As previously noted, Defendant argues this court does not have personal jurisdiction over it because (1) "[t]he Baldwin Firm lacks sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction," and (2) "[t]he exercise of personal jurisdiction over The Baldwin Firm would be unfair and unreasonable." (Mem. in Supp. of Mot. to Dismiss at 3–7.)

When evaluating the propriety of personal jurisdiction obtained under a state long-arm statute, [the court's] task is normally a two-step process. In the first step, [the court] determine[s] whether the long-arm statute authorizes the exercise of jurisdiction in the circumstances presented. If [the court] answer[s] that affirmatively, [the court] consider[s] whether the exercise of jurisdiction comports with the Fourteenth Amendment due process standards.

*Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993) (citations omitted); *see also Anita's N.M.* Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir.2000). However, South Carolina's long-arm statute "extends South Carolina's jurisdiction as far as due process allows." *Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F.Supp. 351, 354 (D.S.C.1994) (citing *Atlantic Soft Drink v. S.C. Nat'l Bank*, 287 S.C. 228, 336 S.E.2d 876 (1985)).[5] As a result, the normal two-step inquiry "merges into one," focusing on whether "the defendant purposefully established minimum contacts in the forum state, and, if so, whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Joye v. Heuer*, 66 F.3d 316, 1995 WL 552028, *3 (4th Cir. 1995) (unpublished table decision) (internal quotation marks and citations omitted).

### 1. Minimum Contacts

In deciding if Defendant has minimum contacts to this forum, the court must focus on whether Defendant "has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir.1994). When examining the sufficiency of a nonresident defendant's contacts, "[t]he touchstone of the minimum contacts analysis

---

5. South Carolina's long-arm statute provides,

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
(1) transacting any business in this State;
(2) contracting to supply services or things in the State;
(3) commission of a tortious act in whole or in part in this State;
(4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
(5) having an interest in, using, or possessing real property in this State;
(6) contracting to insure any person, property, or risk located within this State at the time of contracting;
(7) entry into a contract to be performed in whole or in part by either party in this State; or
(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C.Code 36–2–803(a).

remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Id.* at 945. Jurisdiction is proper "when a relationship exists between the defendant and the forum 'such that he should reasonably anticipate being haled into court there.'" *Burlington Indus., Inc. v. Yanoor Corp.,* 178 F.Supp.2d 562, 566 (M.D.N.C.2001) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ According to Plaintiffs' Complaint, Defendant does have minimum contacts with Plaintiffs because Defendant, as a "Texas limited liability partnership," has "legal business in South Carolina by way of co-counsel and fee-sharing agreements to be performed, in part, in Charleston County." (Compl.¶ 4.) Additionally, Plaintiffs allege that "in furtherance of one or more of the co-counsel agreements that are the subject of this action," attorneys and/or employees from the Baldwin firm have traveled to South Carolina. (Compl.¶ 5.) Thus, Plaintiffs assert Defendant has the requisite minimum contacts with South Carolina.

Defendant's Memorandum in Support of Motion to Dismiss denied that the Baldwin firm has the requisite minimum contacts because "[t]he sum total of [t]he Baldwin Firm's 'contact' with South Carolina for this case consists of meetings and discussions with Plaintiffs concerning representation of Plaintiffs in the Courts of Texas." (Mem. in Supp. of Mot. to Dismiss at 4.) To support this argument, Defendant produced evidence that the Baldwin firm traveled to South Carolina approximately five times in nineteen years. (Scott Baldwin, Jr. Aff. ¶ 14.) Additionally, Defendant asserts that contrary to Plaintiffs' argument, the contracts were entered into in Texas rather than in South Carolina. (Mem. in Supp. of Mot. to Dismiss at 4–5.)

"[T]he threshold level of contact necessary to connect a non-resident defendant with the forum state varies depending on the type of jurisdiction being exercised." *Burlington Indus.,* 178 F.Supp.2d at 567. General jurisdiction "involves the exercise of jurisdiction over a defendant in a suit unrelated to the defendant's contacts with the forum state," but specific jurisdiction "may be exercised when a cause of action arises out of a defendant's activities in the forum state." *Id.* With respect to specific jurisdiction, a "relationship among the defendant, the forum, and the litigation is the essential foundation." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotation marks omitted).

> A contract with a resident of a forum state does not automatically constitute sufficient contacts to support the exercise of specific jurisdiction, even when the dispute arises from the contract. Such a contract must have a substantial connection with the state so that the nature and quality of a defendant's relationship to the forum "can in no sense be viewed as random, fortuitous, or attenuated."

*Burlington Indus.,* 178 F.Supp.2d at 567 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 480, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

In *English & Smith v. Metzger,* 901 F.2d 36 (4th Cir.1990), the Fourth Circuit affirmed the district court's exercise of personal jurisdiction over a California attorney. In that case, the California attorney ("Metzger") undertook to represent a defendant in a criminal prosecution and related civil forfeiture proceeding in California. *Metzger,* 901 F.2d at 37. The attorney telephoned Smith, a partner in the plaintiff law firm, and the two attorneys agreed that Smith would become his co-counsel in the forfeiture case. *Id.* Smith

was a Virginia lawyer who had law offices in Alexandria, Virginia. *Id.* The California attorney and client signed the contingent fee agreement in San Francisco and mailed it to Smith, who signed it in Alexandria and mailed it back to Metzger. *Id.* Smith worked on the case in Alexandria, and Metzger worked on the case in California. *Id.* The two attorneys exchanged several telephone calls and letters between Virginia and California. *Id.*

The attorneys were successful in preventing forfeiture of some of the property, but Metzger refused to abide by his agreement with Smith. *Id.* at 38. Smith thus filed suit against Metzger in the United States District Court for the Eastern District of Virginia. *Id.* The district court granted summary judgment to Smith, and Metzger appealed, asserting error in the district court's exercise of in personam jurisdiction. *Id.* at 37–38. The Fourth Circuit affirmed:

> The purposeful direction of activities toward the forum is present here. Metzger initiated contact with Smith in Virginia, entered into contracts with Smith by virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia while the two worked on the ... forfeiture case. Metzger's intentional contacts with the State were enough that he could reasonably anticipate being haled into court there, and we are of the opinion that the district court's exercise of jurisdiction did not offend due process.

*Id.* at 39–40 (internal quotation marks and citations omitted); *see also Joye v. Heuer,* 66 F.3d 316 (4th Cir.1995) (unpublished table decision) (affirming district court's exercise of personal jurisdiction over California attorney when the attorney represented a South Carolina resident, orally agreed to split fees with her South Carolina counsel, corresponded by mail and telephone with her South Carolina counsel, and attended depositions in South Carolina).

Several factors weigh in favor of exercising personal jurisdiction. For example, as in *Metzger,* Defendant entered into contracts with Motley Rice and carried on a continuing relationship with Motley Rice while both firms were working on the litigation. The two firms have worked together on this litigation for over 19 years, since 1988. Furthermore, while the disagreement regarding fee-sharing in the case *sub judice* involves asbestos litigation, the parties entered into a fee-sharing agreement concerning Vioxx litigation. This 2005 agreement contains a provision stating that any dispute concerning any aspect of the parties' association shall be resolved by private, binding arbitration and that the arbitrators shall convene in Charleston, South Carolina. (*See* Resp. in Opp'n Ex. B at 3–4.) The court notes that unlike in *Metzger,* Motley Rice initiated contact with Defendant. In addition, there are no South Carolina clients and no actions pending in South Carolina in the asbestos litigation that gave rise to the dispute over fee-sharing. However, the court finds Plaintiffs have met their burden of proving the existence of jurisdiction. Motley Rice and Defendant have a long-standing relationship involving three groups of cases, the parties contemplate South Carolina as a forum for dispute resolution, and the Baldwin firm visited South Carolina in furtherance of the representation of the clients in the asbestos litigation. As the Supreme Court noted in *Burger King,* "[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174 (quoting

*Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).[6]

## 2. Fair Play and Substantial Justice

After looking at whether Defendant has sufficient minimum contacts with a forum to allow for personal jurisdiction, the court must also decide whether the exercise of jurisdiction in this case is constitutionally reasonable, meaning that it "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. To determine if the jurisdiction is constitutionally reasonable, the court evaluates several factors. These factors include:

> [ (1) ] the burden on the defendant, [ (2) ] the forum State's interest in adjudicating the dispute, [ (3) ] the plaintiff's interest in obtaining convenient and effective relief, [ (4) ] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [ (5) ] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 217 (4th Cir.2001) (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (citing *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174) (internal quotation marks omitted). Thus in order to satisfy this requirement a "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Defendant argues the court's exercise of personal jurisdiction over it would place "substantial" burdens on it, as it would be "forced to defend and litigate two separate actions in two separate forums with multiple witnesses and discovery that overlaps all areas of th[e] case." (Mem. in Supp. of

**6.** Albeit in a different context, the Fourth Circuit has stated,

> Thus, adopting and adapting the *Zippo* model, we conclude that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir.2002); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997). The Fourth Circuit determined the court did not have personal jurisdiction over the defendant because the defendant's activity "was, at most, passive," and although electronic signals from the defendant's facility were ultimately received in Maryland, the defendant

"functioned from Georgia as an ISP, and in that role provided bandwidth to Alternative Products, also located in Georgia." *ALS Scan,* 293 F.3d at 714. The defendant "did not select or knowingly transmit infringing photographs to Maryland with the intent of engaging in business or any other transaction." *Id.* at 714–15. Because the defendant's role was "at most passive," the Fourth Circuit found it had not "'purposefully availed' itself of the privilege of conducting business or other transactions in Maryland." *Id.* at 715 (citations omitted).

While not directly on point, *ALS Scan* provides some support to Plaintiffs' argument that the court has personal jurisdiction over Defendant. Plaintiffs and Defendant communicated with each other during their nineteen year relationship in which they served as co-counsel, and Plaintiffs now have a potential cause of action against Defendant for breach of contract.

Mot. to Dismiss at 6.) Defendant further states that personal jurisdiction in South Carolina is not reasonable because "the interests of Plaintiffs in asserting jurisdiction over Defendant in South Carolina are minimal at best." (Mem. in Supp. of Mot. to Dismiss at 6.) Additionally, since the case concerns civil actions that are pending in Texas or in Multi-district Litigation in Pennsylvania, Defendant asserts South Carolina's only connection with this case is that it is the location of Motley Rice's home office. (Mem. in Supp. of Mot. to Dismiss at 6.) Therefore, in order to avoid "inconsistent rulings on issues of law and fact by two Courts in different forums addressing the exact same issues," Defendant asserts that personal jurisdiction should not. be exercised. (Mem. in Supp. of Mot. to Dismiss at 6.)

Plaintiffs, on the other hand, argue the "fair play and substantial justice" portion of personal jurisdiction analysis favors exercising personal jurisdiction. Plaintiffs assert Defendant participates in litigation nationwide and that as a result, jurisdiction in South Carolina "does not place any undue burden on this Defendant." · (Resp. in Opp'n at 9.) Plaintiffs also assert that "South Carolina has a substantial adjudicative interest in this dispute that will determine personal property rights of South Carolina citizens." (Resp. in Opp'n at 9.) Furthermore, Plaintiffs argue that to the extent a breach occurred, it occurred in South Carolina. (Resp. in Opp'n at 10.) According to Plaintiffs, "[i]t is economical and efficient that this [case] be decided in South Carolina, where the work is being done and where the bulk of the records and witnesses are located." (Resp. in Opp'n at 10.)

■ The court agrees with Plaintiffs that the exercise of jurisdiction over Defendant comports with fair play and substantial justice, as the factors weigh in favor of exercising personal jurisdiction.

First, while Defendant would no doubt be somewhat burdened by having to defend a lawsuit in South Carolina, the court finds this burden would be minimal. While Defendant asserts it is not a national firm, Plaintiffs produced evidence that Defendant served as counsel in litigation occurring in Florida, and both parties have sufficient resources to have their own airplanes. Second, South Carolina would seemingly have an interest in adjudicating a dispute over a fee agreement formed by one of its residents. The third factor also weighs in favor of exercising personal jurisdiction. While Motley Rice is also a national law firm, it has no office in Texas, and the Motley Rice attorneys working on the cases at issue in this dispute all appear to be located in South Carolina. It is uncertain whether the other factors weigh in favor of exercising personal jurisdiction, but the court finds that exercising jurisdiction over Defendant is constitutionally reasonable. Litigating in South Carolina would not be so difficult and inconvenient as to put Defendant at a severe disadvantage, and Defendant's conduct and connection with South Carolina is such that it should reasonably anticipate being haled into court here.

## B. Rule 12(b)(3) Improper Venue

■ The general venue statute is 28 U.S.C. § 1391. However, since this case has been removed from state court to the United States District Court for the District of South Carolina, it is governed exclusively by 28 U.S.C. § 1441(a), which provides in relevant part as follows:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for

the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a). The Supreme Court of the United States has stated that, "even on the question of venue, § 1391 has no application ... [in] a removed action. The venue of removed actions is governed by 28 U.S.C .... § 1441(a)." *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S.Ct. 900, 97 L.Ed. 1331 (1953); *see also Quick v. Coale, Cooley, Lietz, McInerny & Broadus, P. C.*, 212 F.R.D. 299, 300 (M.D.N.C.2002) ("[T]he fact that the federal court to which the action is removed might not have been an appropriate venue if the action had been brought there initially is irrelevant."); *Straub v. Kean*, 207 F.Supp. 420, 422 (D.S.C.1962) ("The venue of removed actions is governed by 28 U.S.C.A. § 1441(a), providing for removal to the district court of the United States for the district and division embracing the place where such action is pending."). Plaintiff brought this action in the Charleston County Court of Common Pleas, and Defendants removed the action to this court, which is the district court "for the district and division embracing the place where such action [was] pending." *See* 28 U.S.C. § 1441(a). Therefore, "once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Godfredson v. JBC Legal Group, P.C.*, 387 F.Supp.2d 543, 556 (E.D.N.C.2005) (quoting *Hollis v. Florida State Univ.*, 259 F.3d 1295, 1299 (11th Cir.2001)).

While Defendant asserts that a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas, this argument seems to be based on 28 U.S.C. § 1391, which has no application in a removed action. Plaintiffs brought this action in the Charleston County Court of Common Pleas, and Defendant removed the action to this court. As venue is proper, the court denies Defendant's Motion to Dismiss for improper venue. *See Selective Ins. Co. of S.C. v. Schremmer*, 465 F.Supp.2d 524, 525–26 (D.S.C.2006).

## C. Duplicative Action/Motion to Transfer Venue under 28 U.S.C. § 1404(a)

■ Defendant also moved to dismiss this action under federal law on the basis that this action is duplicative of an action pending in the district court for the Eastern District of Texas. Generally, a federal suit may be dismissed "for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir.1993); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (noting that although there is no specific rule regarding federal cases, "the general principle is to avoid duplicative litigation"). Duplicative claims include those in which there are no significant differences between the claims, parties, and available relief in the two suits. *Serlin*, 3 F.3d at 223.

In *Learning Network v. Discovery Communications, Inc.*, 11 Fed.Appx. 297 (4th Cir.2001), the Fourth Circuit noted it had "recognized the 'first to file' rule of the Second Circuit, giving priority to the first suit absent showing of a balance of convenience in favor of the second." *Learning Network*, 11 Fed.Appx. at 300–01; *see also Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 423 (2d Cir.1965). In *Learning Network*, Discovery sent a letter dated August 11, 2000 to Learning Network alleging violations of its trademark rights. *Learning Network*, 11 Fed.Appx. at 299. Learning Network filed a declaratory judgment action in Maryland on August 23, 2000, seeking a declaration that its "use of the designation 'LEARNING NETWORK' did not infringe or dilute the distinctive quality of

Discovery's marks." *Id.* Then, on January 22, 2001, Learning Network was advised that Discovery had filed an action in New York, alleging trademark infringement and dilution as well as state law claims. *Id.* at 300. Although Discovery sought a temporary restraining order preventing Learning Network from proceeding in the Maryland action, the New York judge denied Discovery's request but ordered expedited discovery. *Id.* On January 25, 2001, Learning Network filed, in the Maryland action, a motion for a preliminary injunction enjoining Discovery from proceeding in the New York action. *Id.* The judge in the Maryland action granted Learning Network's motion for preliminary injunction, and Discovery appealed. *Id.*

The Fourth Circuit affirmed, noting it had recognized the "'first to file' rule." *Id.* Discovery argued this rule was inapplicable "because of special circumstances or a balance of convenience in favor of New York." *Id.* at 301.[7] Discovery argued Learning Network's filing of the Maryland action "was an improper anticipatory filing because it was made under the threat of imminent litigation." *Id.* The court noted that although "there may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has become so certain or imminent[ ] that the declaratory judgment action is merely an improper act of forum shopping[ ] or a race to the courthouse," such was not the case in *Learning Network.* *Id.* Discovery's August 11 letter was sent nearly six weeks after the alleged trademark violations, and the letter "neither overtly threatened litigation nor threatened to take particular action if [Learning] Network failed to respond to the letter by a certain date." *Id.* at 301–02. The Fourth Circuit found the district court did not abuse its discretion in finding an exception to the first-filed rule was not warranted. *Id.* at 302.

■ Defendant argues that this court is dealing with duplicative actions in two federal district courts: the instant action and the pending action in the Eastern District of Texas. Defendant asserts that as the case *sub judice* was filed second, it should be dismissed. (Mem. in Supp. of Mot. to Dismiss at 7.) In deciding if these actions are duplicative, the court must look for differences in issues, parties, and relief sought in both complaints. *See Cottle v. Bell,* 229 F.3d 1142, 2000 WL 1144623, *1 (4th Cir.2000) (unpublished table decision). The Texas complaint, filed by the Baldwin firm, lists more defendants than the instant action has plaintiffs; however, those named defendants are former names for the law firm that is now known as Motley Rice, LLC[8] as well as the name of the "registered agent," Joseph F. Rice. (Def. Compl. in Tex. at 1–2.) Both actions concern the same fee-sharing and co-counsel agreements for the "Murphy/Webb," "Northern District," and "Archondakis" cases. (Compl. at 2–4); (Def. Compl. in Tex. at 4–6.) The Baldwin Firm sued for breach of contract on the part of Motley Rice and wants an accounting to provide relief for work it alleges it performed as part of its contract. (Def. Compl. in Tex. at 5–7.) The instant South Carolina action seeks declaratory relief as well as relief for Defendant's alleged breach of contract. (Compl. at 5–6.) Additionally, Plaintiffs in

---

**7.** In a footnote, the Fourth Circuit stated that it had "not stated explicitly that special circumstances may warrant an exception to the first-filed rule." *Learning Network,* 11 Fed. Appx. at 301 n. 2. The court did not address the issue because it found no special circumstances present in the case. *Id.*

**8.** In the complaint filed in the instant action, Plaintiffs explain that Motley Rice, LLC has formerly been known as MRRM, P.A. and Ness, Motley, Loadholt, Richardson & Poole, P.A. (Compl. at 1.)

this case seek damages that would also require an accounting. (Compl. at 6–7.) The instant action and the action pending in the Eastern District of Texas appear duplicative because the cases seem to cover the same parties, issues, and relief. Indeed, Plaintiffs' counsel admitted at the hearing that the underlying dispute in the two actions is the same.

Plaintiffs seem to argue the court should not dismiss its action as duplicative because of an exception to the first to file rule.[9] Specifically, Plaintiffs assert that the suit pending in the Eastern District of Texas was an anticipatory lawsuit which was filed to secure a more favorable forum. Assuming the Fourth Circuit recognizes such an exception, it is not applicable to the facts of this case. Motley Rice sent a letter to Defendant in December of 2006 which stated its purpose was to "update" Defendant on the Canadian cases. The letter did not threaten litigation but stated that Motley Rice could not honor past fee agreements on the Northern District cases; the letter included a check "bringing [Defendant] current on all cases."

(Def. Reply Ex. E.) The letter does not even appear to contemplate litigation, so the "anticipatory lawsuit" exception is not applicable.

While the case *sub judice* is a duplicative action, the court finds the better alternative to dismissing the case is transferring it to the United States District Court for the Eastern District of Texas, Marshall Division. As previously noted, the Defendant requested that if the case is not dismissed for lack of personal jurisdiction, improper venue, or as a duplicative action, the case should be transferred to the United States District Court of the Eastern District of Texas, Marshall Division pursuant to 28 U.S.C. § 1404(a).[10]

In *Byerson v. Equifax Information Services, LLC,* 467 F.Supp.2d 627 (E.D.Va. 2006), the court was evaluating the defendant's motion to transfer venue or in the alternative to stay proceedings. *Byerson,* 467 F.Supp.2d at 629–30. More than two months before the action was filed in Virginia, similar class actions were filed in the District of South Carolina. *Id.* at 630.

---

9. Plaintiffs also seem to argue that because Defendant amended its complaint in the Texas action and prior to the filing of this amended complaint, Plaintiffs filed the instant action, there is no winner of the first to file rule. This argument is without merit.

10. This section of United States Code states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge F.B.L. –585,* 364 U.S. 19, 26, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). However, a plaintiff's "choice of venue is accorded great weight in a motion to transfer under

§ 1404(a)." *Arabian v. Bowen,* 966 F.2d 1441, 1992 WL 154026, *1 (4th Cir.1992) (unpublished table decision) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Furthermore, "[t]he defendant bears a heavy burden of showing that the balance of interests weighs strongly in his favor in a motion to transfer." *Id.* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). In ruling on a motion to transfer, several factors are commonly used: "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice." *Landers v. Dawson Constr. Plant, Ltd.,* 201 F.3d 436, 1999 WL 991419, *2 (4th Cir.1999) (unpublished table decision) (citations omitted).

Because the case was very similar to the actions pending in South Carolina, the defendants sought to transfer the case there, arguing such a transfer would prevent duplicative litigation and that the first-to-file rule supported their motion to transfer. *Id.* at 631. The court assessed the § 1404(a) factors, finding that on the facts, the plaintiffs' choice of venue, the convenience of the parties, and the convenience of the witnesses weighed against transfer. *Id.* at 633–34. However, the court transferred the case to the District of South Carolina. *Id.* at 637. The Eastern District of Virginia stated,

> Experian and Equifax urge transfer primarily to promote judicial economy and to avoid inconsistent judgments. Experian and Equifax argue that the first-to-file rule requires transfer of this action to the District of South Carolina, where three related actions are pending. The existence of a related action in a different judicial District and the first-to-file rule are sometimes analyzed separately, but the policies served by transfer are similar in both instances. Moreover, both are properly considered as components of the interest of justice.

*Id.* at 635. The court found that "wholly apart from the first-to-file rule," transfer of the action to South Carolina would "promote judicial economy and consistency of results." *Id.* at 636.

In the case *sub judice,* Defendant argues the court should transfer the case to the Eastern District of Texas because "the interests of justice dictate that this action should be transferred to the Eastern District of Texas where it may be consolidated with the parallel action filed in that Court." (Mem. in Supp. of Mot. to Dismiss at 8.) Since the case pending in the Eastern District of Texas appears virtually identical to the case pending here, the court agrees with Defendant. If both parties have to be present in Texas in order to prosecute or defend that action, it seems most convenient and cost-efficient to have just one trial. Because of the duplicative action, several factors weigh in favor of the transfer: the convenience of the parties and witnesses; the cost of obtaining the attendance of the witnesses; and the interests of justice. The court thus transfers the case to the United States District Court for the Eastern District of Texas.

## CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant's Motion to Dismiss is **DENIED.** It is further **ORDERED** that this case is transferred to the United States District Court for the Eastern District of Texas.

**AND IT IS SO ORDERED.**